2014 CO 24

Nicole S. HANLEN, Lynn D. Ussery, James H. Joy, June Marie McNees, Kelly L. McNees, Karen Marquez, Meagan Gabaldon, and David J. Rodenbaugh, Plaintiffs–Appellees

v.

Scott GESSLER, in his official capacity as Colorado Secretary of State, Defendant–Appellant

Karen Long, as Clerk and Recorder for the County of Adams, State of Colorado; Jim F. Candelarie, as Clerk and Recorder for the City and County of Broomfield; and Frances E. Mullins, as Designated Election Official for Adams 12 Five Star School District, Defendants–Appellees.

Supreme Court Case No. 13SA306

Supreme Court of Colorado.

April 7, 2014

Attorneys for Plaintiffs–Appellees: Heizer Paul LLP, Edward T. Ramey, Martha M. Tierney, Denver, CO

Attorneys for Defendant Appellant: John W. Suthers, Attorney General, LeeAnn Morrill, First Assistant Attorney General, Matthew D. Grove, Assistant Attorney General, Sueanna P. Johnson, Assistant Attorney General, Denver, CO

Attorneys for Amicus Curiae Douglas County Education Alliance: Lewis Roca Rothgerber LLP, Thomas M. Rogers III, Eric V. Hall, Brent R. Owen, Denver, Colorado

Attorneys for Amicus Curiae Enrico Figueroa, Brian Vande Krol, Joseph Holt, Mark Rule, & Melissa Wills: Hackstaff Law Group, LLC, Mario Nicolais, II, Kelly Breuer, Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 This case concerns judicial review of Election Rule 10.7.5, which was promulgated by Colorado Secretary of State Scott Gessler ("Secretary") as a temporary or emergency rule on the evening of the November 5, 2013 election. Plaintiffs are registered electors of Adams 12 Five Star School District ("Adams 12") who brought suit against the Secretary and local election officials following the Adams 12 school district director election.

¶ 2 Plaintiffs' complaint raised two claims. First, Plaintiffs sought judicial review of the Secretary's authority to promulgate Rule 10.7.5, which permits a designated election official to determine, after ballots have been printed, that an individual appearing on the ballot is "not qualified for office," and directs that votes cast for that individual are "invalid and must not be counted." Second, Plaintiffs sought an order directing the Clerk and Recorder of Adams County, the Clerk and Recorder of the City and County of Broomfield, and the Adams 12 designated election official (collectively, "election officials") to comply with their statutory duties under the election code by completing the vote count and certifying the vote tally for all candidates in the school district director election.

¶ 3 Following a hearing, the district court concluded that Rule 10.7.5 conflicts with section 1–5–412(3), C.R.S. (2013) (providing that votes shall not be counted for a candidate who dies or withdraws after ballots are printed), and section 22–31–129, C.R.S. (2013) (establishing the vacancy appointment process for school district director offices). Thus, the district court ruled that the Secretary acted in excess of his authority in promulgating the Rule. The district court ordered the defendants to complete and certify the vote count for all candidates in the Adams 12 director district 4 election. The Secretary seeks review of "whether Rule 10.7.5 is contrary to and in conflict with existing election statutes." Sec'y Appl. for Review Pursuant to § 1–1–113(3), C.R.S., at 14.

¶ 4 The Secretary has emphasized that Rule 10.7.5 is a rule of general applicability, meaning that it applies to all elections subject to the Secretary's authority, and not just the school district director election underlying this case. We need not address whether the Rule conflicts with section 22–31–129 regarding school district director vacancies or

resolve the parties' competing interpretations of that provision, because we conclude that, as a rule of general applicability, Rule 10.7.5 conflicts with the election code, and is therefore void.

¶ 5 First, the General Assembly has identified very limited circumstances in which votes cast for a candidate appearing on the ballot are deemed invalid and shall not be counted. We seriously question whether the Secretary may, pursuant to his rulemaking authority, unilaterally expand those limited "no-count" circumstances identified in statute. However, even assuming that the Secretary's rulemaking authority permits him to broaden the limited "no-count" circumstances identified in statute, Rule 10.7.5 conflicts with section 1–4–1002(2.5)(a), C.R.S. (2013). Rule 10.7.5 and section 1–4–1002(2.5)(a) both address votes cast for candidates on the ballot who are deemed disqualified during the eighteen days prior to an election, after ballots have been printed and mail ballots have been distributed. Under section 1–4–1002(2.5)(a), votes cast for a disqualified partisan candidate under these circumstances "are to be counted and recorded." As a rule of general applicability, Rule 10.7.5 applies in both partisan and non-partisan elections, including a situation governed by section 1–4–1002(2.5)(a). However, contrary to the statutory provision, Rule 10.7.5 directs that, where a designated election official has determined that a person appearing on the ballot is "not qualified for office," any votes cast for that person are "invalid and must not be counted."

¶ 6 In addition to this specific conflict, the Rule suffers a more basic flaw; namely, it assumes that a *designated election official* may unilaterally determine, after ballots have been printed, that a previously certified candidate is "not qualified for office." Under the election code, challenges to a candidate's eligibility can be raised by any eligible elector at multiple junctures in the election process, including post-election. But the election code requires issues regarding a certified candidate's eligibility to be determined by the courts. Rule 10.7.5 contravenes the election code by permitting a designated election official to usurp the courts' express authority to resolve such issues. Indeed, a post-election challenge has been filed in the Broomfield District Court concerning the school district director election underlying this case. Any issues in that election concerning the challenged candidate's eligibility for office, and any potential controversy regarding the school district director vacancy provision in section 22–31–129, are properly resolved by that court; we do not opine on the merits of that dispute here. The narrow issue before this court, as presented by the Secretary, is "whether Rule 10.7.5 is contrary to or in conflict with existing election statutes." For the reasons identified, we conclude that it is. Accordingly, we affirm the district court's order, albeit on different grounds. In so doing, we expressly decline to adopt the trial court's interpretation of section 22–31–129, and express no opinion on whether or how that provision applies to the school board election underlying this case.

## I. Facts and Procedural History

¶ 7 School district director elections are governed by the Uniform Election Code of 1992 ("election code"), sections 1–1–101, et seq., C.R.S. (2013), and provisions specific to school board elections found in sections 22–31–101 through –134, C.R.S. (2013). As required by section 1–7–116(1), C.R.S. (2013), such elections are conducted by mail ballot "under the supervision of, and subject to rules promulgated in accordance with article 4 of title 24, C.R.S., by, the secretary of state." § 1–7.5–104, C.R.S. (2013).

¶ 8 Section 22–31–107(1), C.R.S. (2013), provides that "[a]ny candidate for the office of school director of a school district shall have been a registered elector of the district for at least twelve consecutive months prior to the election." Additionally, where a school district elects directors under a director district plan, a candidate for a particular director district "shall be a resident of the director district that will be represented." § 22–31–107(1). A person who wishes to be a candidate for school director must file a written notice of intention and a nomination petition with the secretary of the school district board of education. § 22–31–107(2); *see also* § 1–4–803, C.R.S. (2013) (setting forth

requirements for nomination petitions for school district director candidates). Upon receiving the nomination petition, the school board's "designated election official[1] ... shall review all petition information and verify the information against the registration records, and, where applicable, the county assessor's records." § 1–4–908(1), C.R.S. (2013). Upon determining that the candidate's petition is sufficient (and following the five-day period for protest), the designated election official certifies the candidate to the ballot. § 1–4–908(3). In a coordinated election, the designated election official also notifies the coordinated election official of the candidate's certification.[2] *Id.*

¶ 9 Pursuant to section 22–31–104, C.R.S. (2013), Adams 12 held a regular biennial nonpartisan school district director election on November 5, 2013. Adams 12 encompasses parts of Adams and Broomfield Counties; accordingly, this election was conducted as a "coordinated election" pursuant to sections 22–31–105(2) and 1–7–116, C.R.S. (2013).

¶ 10 The Adams 12 school board is composed of five directors. Although each director is required to reside in the specific director district represented, all directors are elected at-large. Two candidates, incumbent Rico Figueroa and challenger Amy Speers, submitted nomination petitions for the district 4 director seat. The Adams 12 designated election official reviewed the petitions and certified both candidates to the ballot.

¶ 11 Approximately one week before the election, after ballots had been printed and distributed,[3] and mail ballot voting was underway, the designated election official discovered that the address Speers had provided on her nomination petition was not located within the boundaries of director district 4.[4] The designated election official concluded that Speers was ineligible for the office and sent a letter to Speers requesting that she withdraw her candidacy. Although Speers did not contest the designated election official's statements regarding her ineligibility, she did not concede that she was ineligible, nor did she file an affidavit of withdrawal pursuant to section 1–4–1001(1), C.R.S. (2013). On November 1, as voting continued, the designated election official sent letters to the Adams and Broomfield Clerks and Recorders, requesting that they withdraw Speers' name as a candidate. As of election day, November 5, no protest or formal proceeding had been commenced to seek to disqualify Speers or to adjudicate her eligibility to be a candidate. Having received no indication from Speers that she intended to withdraw, the clerks informed the Secretary that they planned to count all the votes cast in the election.

¶ 12 At 5:19 p.m. on election day, the Secretary promulgated Rule 10.7.5, which provides:

> If the designated election official determines, after ballots are printed, that an individual whose name appears on the ballot is not qualified for office, the votes cast for that individual are invalid and must not be counted.

¶ 13 The Secretary's statement of basis and purpose, and his statement of justification and reasons for adoption of the temporary rule, both rely only on section 1–4–501(1), C.R.S. (2013), as statutory authority for the rule.[5] That provision states that no

1. The school district's board of education "govern[s] the conduct of all school elections in the district ... [and] designate[s] an election official who shall be responsible for conducting the election." § 22–31–103(1), C.R.S. (2013).

2. Coordinated school district director elections are conducted by the county clerk and recorder. *See* § 22–31–103(2), C.R.S. (2013).

3. Section 1–7.5–107(3)(a)(I), C.R.S. (2013), requires ballots to be mailed to eligible electors not less than eighteen days prior to the election.

4. In 2011, Speers sought unsuccessfully to be appointed to fill a vacancy in director district 4.

At that time, Speers' address was located in district 4. However, in May 2012, the district redrew its boundaries for school board members, apparently placing Speers' residence outside of the redrawn district 4. Counsel for the designated election official represented to the district court that the election official did not verify Speers' address under the newly-drawn district boundaries prior to certifying her to the ballot.

5. Nothing in the Secretary's statement of basis and purpose or statement of justification and reasons for adoption of the temporary rule refers to section 22–31–129 or indicates that the rationale for the rule was to prevent an ineligible

person is eligible to be a candidate for office unless that person "fully meets the qualifications of that office as stated in the constitution and statutes of this state on or before the date the term of that office begins." *Id.* Section 1–4–501(1) further provides that a designated election official shall not certify the name of any candidate "who fails to swear or affirm under oath that he or she will fully meet the qualifications of the office if elected and who is unable to provide proof that he or she meets any requirements of the office relating to registration, residence, or property ownership." *Id.*

¶ 14 The Secretary's statement of justification and reasons for adoption of the temporary rule states: "If a designated election official mistakenly certifies an ineligible candidate to the ballot and does not discover the mistake until it is too late to correct the ballots, electors might cast votes for the ineligible candidate." Thus, the statement explains, Rule 10.7.5 is "necessary to clarify that all votes cast for an ineligible candidate under the above scenario are invalid."

¶ 15 Because Rule 10.7.5 was promulgated as a temporary or emergency rule, it took effect immediately. To comply with the Rule, the Adams and Broomfield Clerks and Recorders did not report the votes cast for Speers in the election.[6] *See* § 1–1–110(1), C.R.S. (2013) ("The county clerk and recorder ... shall consult with the secretary of state and follow the rules and orders promulgated by the secretary of state....").

¶ 16 On November 14, 2013, Plaintiffs, registered electors of Adams 12, brought suit against the Secretary under section 24–4–106, C.R.S. (2013), of the Administrative Procedures Act ("APA"), seeking judicial review of Rule 10.7.5. Plaintiffs brought a separate claim under section 1–1–113, C.R.S. (2013), to compel the election officials to complete the

vote count and certify the election results.[7] The district court held a forthwith hearing on November 18, 2013.

¶ 17 Plaintiffs observed in their complaint and at the hearing that there had been no adjudication or formal determination of Speers' alleged ineligibility. They did not challenge the designated election official's statements regarding Speers' residency, however. Instead, Plaintiffs argued that the Secretary lacked authority to direct that votes cast for Speers "are invalid and must not be counted." Plaintiffs argued that, under the election code, once ballots have been printed and voting is underway, votes cast for a candidate who appears on the ballot are "invalid and shall not be counted" only where the candidate has died or withdrawn. § 1–5–412(3), C.R.S. (2013). Plaintiffs argued that Speers did not come within the "no-count" circumstances of section 1–5–412(3) because she had neither died nor withdrawn, and that the Secretary's rulemaking authority did not permit him to expand the limited statutory "no-count" circumstances identified in the statute.

¶ 18 Plaintiffs also argued that Rule 10.7.5 circumvents the school district director vacancy procedure in section 22–31–129, C.R.S. (2013), which authorizes the school board to appoint a person to fill a vacancy in a school district director office. Under this provision, a vacancy arises where, for example, "the person who was duly elected or appointed ... *is or becomes* during the term of office a nonresident of the director district which the director represents," or where "a court of competent jurisdiction voids the officer's election ... or removes the person duly elected ... for any cause whatsoever." § 22–31–129(1)(d), (f) (emphasis added). Plaintiffs argued that if Speers garnered more votes than her opponent, then either her non-resi-

---

candidate from being deemed "duly elected" for purposes of that provision.

**6.** Counsel for the Broomfield Clerk and Recorder explained to the district court that the election tabulation software allows the election official to filter out votes cast for a candidate by clicking a box to indicate that the candidate has withdrawn. To comply with Rule 10.7.5, the Broomfield Clerk and Recorder clicked the box indicat-

ing that Speers had withdrawn, so that votes cast for her did not appear in the report.

**7.** Section 1–1–113(1) provides for jurisdiction in the district court "when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty under [the election] code has committed or is about to commit a breach or neglect of duty or other wrongful act."

dency in district 4 upon commencement of her term of office, or her disqualification as a candidate for that office, would trigger a vacancy under section 22–31–129. However, because Rule 10.7.5 barred election officials from counting any votes cast for Speers, the true vote tally could not be known, and it would be impossible to determine whether the vacancy provision was triggered.

¶ 19 In response, the Secretary challenged both the district court's jurisdiction and the merits of Plaintiffs' challenge to Rule 10.7.5. The Secretary conceded that the Plaintiffs could properly challenge Rule 10.7.5 under section 24–4–106(7). However, he argued that the court lacked jurisdiction to grant relief under section 1–1–113 because claims under that provision are limited to disputes arising prior to election day, and Plaintiffs' complaint concerned acts that occurred on or after the day of the election.

¶ 20 As to Plaintiffs' arguments regarding Rule 10.7.5, the Secretary acknowledged that section 1–5–412(3) prohibits the counting of votes only where a candidate has died or withdrawn after the ballots have already been printed. *See* § 1–5–412(3). However, the Secretary argued that the "no-count" circumstances of section 1–5–412(3) are not exclusive, and noted, for example, that section 1–4–1101(2), C.R.S. (2013), prohibits counting votes cast for a write-in candidate who has not filed an affidavit of intent. The Secretary maintained that the election code is silent with respect to whether election officials may count votes cast for an ineligible candidate who is "mistakenly" certified to the ballot. The Secretary argued that Rule 10.7.5 is therefore necessary to fill in this perceived gap in the election code.

¶ 21 The Secretary also disputed Plaintiffs' assertion that Rule 10.7.5 conflicts with section 22–31–129(1)(d), which provides that a vacancy occurs where the "person who was duly elected … is or becomes during the term of office a nonresident of the director

district which the director represents." The Secretary argued that logic dictates that a candidate who is ineligible to hold office can never be "duly elected." Because the vacancy provision applies only to persons who are "duly elected," the Secretary argued that a candidate who was certified to the ballot, but is nonetheless ineligible, cannot trigger a vacancy under section 22–31–129(1)(d).

¶ 22 Shortly after the hearing, the district court ruled from the bench. The court concluded that it had jurisdiction to hear the action pursuant to sections 1–1–113 and 24–4–106(7). After observing that there had been no formal adjudication of whether Speers was qualified to be a candidate, the court concluded that regardless, the Secretary had no basis of authority to direct that votes cast for any candidate are invalid and not to be counted. Specifically, the court held that Rule 10.7.5 conflicted with section 1–5–412(3) because the Rule expanded, without authority, the limited circumstances under that provision in which votes cast for a certified candidate on the ballot are not counted. The court also held that the Rule circumvented the plain and unambiguous language in the vacancy statute, section 22–31–129(1)(d). Because Rule 10.7.5 was contrary to law, it was promulgated in excess of the Secretary's authority and did not meet the standard for emergency rulemaking under section 24–4–103(6)(a), C.R.S. (2013). Accordingly, pursuant to section 1–1–113, the court ordered the county clerks and recorders to comply with their statutory duties and complete and certify the vote count for all candidates in the Adams 12 director district 4 election. The vote count revealed that Speers received more than sixty-three percent of the votes cast.[8]

¶ 23 On December 3, 2013, Figueroa filed an election contest under section 1–11–201, C.R.S. (2013), in the district court for the City and County of Broomfield. *See* Verified Statement of Election Contest, *Figueroa v.*

---

8. The court takes judicial notice of the official vote tally, as published on the Colorado Secretary of State's website. In Adams County, Speers received 19,180 votes, and Figueroa received 10,971. In Broomfield County, Speers received 4,989 votes, and Figueroa received 3,110 votes. Accordingly, Speers received a total of 24,169 votes (63.19% of the total votes cast) and Figueroa received a total of 14,081 votes (36.81% of the total votes cast). *See* http://results.enr.clarityelections.com/CO/Adams/48373/123545/en/summary.html.; http://results.enr.clarityelections.com/CO/Broomfield/48379/123665/en/summary.html.

*Speers,* No. 13CV30306 (Broomfield Dist. Ct. Dec. 4, 2013).[9] Figueroa's complaint alleges that Speers is not eligible to hold office, and that instead, Figueroa was legally elected to the director seat because he received the most votes of any qualified candidate. *See* § 1–11–201(1)(a) (permitting an election contest on grounds that "the candidate elected is not eligible to hold the office for which elected"); § 1–11–201(1)(e) (permitting an election contest on grounds that "for any reason, another candidate was legally elected to the office"). The Broomfield action has been stayed pending resolution of this case.[10]

¶ 24 In the meantime, the Secretary brought an expedited appeal to this court under section 1–1–113(3). The Secretary contends that the district court lacked jurisdiction to hear the claims below because section 1–1–113 does not permit review of controversies arising from an alleged breach of duty or other wrongful act occurring on or after election day. The Secretary also argues that Rule 10.7.5 is not contrary to or in conflict with existing statutes.

## II.  Analysis

¶ 25 The Secretary has emphasized throughout this litigation that Rule 10.7.5 is a rule of general applicability, meaning that Rule 10.7.5 applies to all elections subject to the Secretary's authority, and not merely the school district director election underlying this case. The Secretary's position is reinforced by the plain language of the Rule itself, as well as the accompanying statement of basis and purpose, which do not limit the Rule to school board elections, or even to nonpartisan elections.

¶ 26 Because Rule 10.7.5 is a Rule of general applicability, and because the Secretary asks us to determine whether the rule conflicts with existing election statutes,[11] we

must look to the interplay between the Rule and the election code as a whole. In so doing, we conclude that Rule 10.7.5 conflicts, at a minimum, with section 1–4–1002(2.5)(a), which provides that where a vacancy occurs less than eighteen days before an election due to a partisan candidate's disqualification, votes cast in the election for that disqualified candidate "are to be counted and recorded." Rule 10.7.5 contravenes section 1–4–1002(2.5)(a) by directing that, where a designated election official has determined that a person appearing on the ballot is "not qualified for office," any votes cast for that person are "invalid and must not be counted."

¶ 27 We further hold that Rule 10.7.5 conflicts with the election code by impermissibly allowing designated election officials to usurp the courts' express authority to determine issues of eligibility concerning a candidate who has been certified to the ballot. Because Rule 10.7.5 conflicts with the election code, it is void. Accordingly, we need not decide whether the Rule conflicts with section 22–31–129, nor resolve the parties' competing interpretations of that provision.

### A.  Jurisdiction

¶ 28 As an initial matter, we address the Secretary's contention that the district court lacked jurisdiction to grant relief under section 1–1–113. The Secretary argues that section 1–1–113 applies only to controversies arising from a breach or neglect of duty or other wrongful act that occurs "prior to the day of an election." According to the Secretary, the district court lacked jurisdiction to grant relief here because Plaintiffs' complaint concerned matters that occurred on or after election day—namely, the promulgation of Rule 10.7.5 and the counting of votes.

9.  The Broomfield district court has allowed the Secretary and the Plaintiffs in this case to intervene in the election contest.

10.  We take judicial notice of the Broomfield election contest as it relates to this proceeding. *See Vento v. Colo. Nat'l Bank,* 985 P.2d 48, 52 (Colo. App.1999) ("[A] court may take judicial notice of the contents of court records in a related proceeding."). We express no opinion as to the merits of that contest.

11.  Although the Secretary indicated at oral argument that a future permanent rule could be modified, this possibility does not alter our analysis. The question before us is whether Rule 10.7.5, as promulgated, contravenes existing statutes. Unidentified potential future amendments to the Rule do not inform our decision as to whether the Rule was originally promulgated in excess of the Secretary's rulemaking authority.

¶ 29 Plaintiffs brought separate claims against the Secretary and the election officials. First, Plaintiffs challenged the Secretary's rulemaking authority under the APA, and requested a forthwith hearing pursuant to sections 24–4–106(4) and –106(10). The Secretary concedes that Plaintiffs properly challenged Rule 10.7.5 under section 24–4–106(4) in the district court. The district court relied on section 24–4–106(7) when it concluded that the Secretary acted in excess of his rulemaking authority in promulgating Rule 10.7.5. The Secretary seeks review of that ruling here.

¶ 30 Second, Plaintiffs separately requested an order pursuant to section 1–1–113 directing the election officials to substantially comply with their statutory duties to complete and certify the vote count. The district court acted under this provision when it ordered the *election officials* [12] to complete the vote count and certify the vote tally. The election officials do not appeal that order. Thus, the only issue properly before us on appeal is whether the Secretary acted in excess of his rulemaking authority under the APA.

¶ 31 The Secretary brings his appeal under section 1–1–113(3), which provides that district court proceedings under section 1–1–113 may be reviewed and finally adjudicated by this court, unless this court, in its discretion, declines jurisdiction. *See* § 1–1–113(3). However, the district court's ruling against the Secretary was based solely on section 24–4–106(7) of the APA, not section 1–1–113. Accordingly, we do not have appellate jurisdiction under section 1–1–113(3) to review that ruling here. That said, section 24–4–106(9) of the APA provides that when an agency's rulemaking authority is challenged, the "decision of the district court shall be subject to appellate review as may be permitted by law or the Colorado appellate rules." Under Colorado Appellate Rule 21, we may exercise our original jurisdiction to review the district court's order invalidating the Rule, notwithstanding that the Secretary has captioned his appeal under section 1–1–113.

¶ 32 The decision to exercise original jurisdiction pursuant to C.A.R. 21 lies entirely within the discretion of the court. *Fognani v. Young,* 115 P.3d 1268, 1271 (Colo. 2005). We will exercise this extraordinary jurisdiction "to review whether the trial court abused its discretion in situations where the petition raises an issue of first impression that is of significant public importance, and where the normal appellate process would prove inadequate." *People v. Voth,* 2013 CO 61, ¶ 12, 312 P.3d 144, 148. We conclude that exercise of our original jurisdiction is warranted in this case because the trial court's order invalidating Rule 10.7.5 raises an issue of significant public importance relating to election procedures, and this election matter warrants expedited resolution.

### B. Standard of Review

¶ 33 This appeal concerns a question of law; therefore, we review the district court's ruling de novo. *See Bd. of Cnty. Comm'rs of San Miguel Cnty. v. Colo. Pub. Utils. Comm'n,* 157 P.3d 1083, 1088 (Colo. 2007). In reviewing a rule under the APA, "[w]e may consider and defer to an agency's interpretation of its own enabling statute and regulations the agency has promulgated, but we are not bound by the agency's interpretation." *Id.*

### C. The Secretary's Rulemaking Authority

¶ 34 The Secretary is charged by statute with supervising the conduct of elections within the state, and enforcing provisions of the election code. § 1–1–107(1)(a)–(b), C.R.S. (2013). The Secretary is also required, together with the "assistance and advice of the attorney general, to make uniform interpretations" of the election code. § 1–1–107(1)(c). The Secretary has the authority to promulgate rules necessary to ensure the proper administration of elections:

In addition to any other powers prescribed by law, the secretary of state shall have the following powers: (a) to promulgate,

---

12. Although the district court ordered "all defendants" to perform their statutory duty to complete and certify the vote count, as a practical matter, this directive applied only to the election officials responsible for conducting the vote count, and not the Secretary.

publish, and distribute ... such rules as the secretary of state finds necessary for the proper administration and enforcement of the election laws....

§ 1–1–107(2). Under section 24–4–103(6)(a), the Secretary may promulgate a rule on a temporary or emergency basis. An emergency rule may be adopted without the notice and public hearing requirements of the APA, "if the agency finds that immediate adoption of the rule is imperatively necessary to comply with a state or federal law or federal regulation or for the preservation of public health, safety, or welfare and compliance with the requirements of this section would be contrary to the public interest and makes such a finding on the record." § 24–4–103(6)(a).

¶ 35 However, the Secretary's power to promulgate rules regarding elections is not without limits. Specifically, the Secretary lacks authority to promulgate rules that conflict with statutory provisions. *See, e.g.,* § 24–4–103(4)(b)(IV) ("No rule shall be adopted unless ... [t]he regulation does not conflict with other provisions of law."). A rule that conflicts with a statute is void. § 24–4–103(8)(a); *Colo. Consumer Health Initiative v. Colo. Bd. of Health,* 240 P.3d 525, 528 (Colo.App.2010) ("A rule may not modify or contravene an existing statute, and

any rule that is inconsistent with or contrary to a statute is void.").

### D. Rule 10.7.5 Conflicts with the Election Code

■ ¶ 36 The district court concluded that the Secretary lacked authority to promulgate Rule 10.7.5 because it conflicts with sections 1–5–412(3) and 22–31–129. We agree that the Rule is contrary to law, but for different reasons. We hold that Rule 10.7.5 conflicts with section 1–4–1002(2.5) (requiring votes cast for a partisan candidate who is deemed disqualified less than eighteen days before a general election to be "counted and recorded"), as well as provisions of the election code that require questions regarding a certified candidate's eligibility to be determined by a court, not an election official. Because we conclude that Rule 10.7.5 is void for these reasons, we need not address whether the Rule conflicts with section 22–31–129. We expressly decline to adopt the trial court's interpretation of section 22–31–129, and express no opinion on whether or how that provision applies to the school board election underlying this case.[13]

¶ 37 The General Assembly has identified very limited circumstances in which the votes cast for a candidate appearing on the printed ballot are deemed "invalid and shall not be counted"; namely, where the candidate has died or withdrawn. *See* § 1–5–412(3).[14] The

**13.** Rico Figueroa's claims in the Broomfield election contest are grounded in sections 1–11–201(1)(a) and –(1)(e). His complaint does not mention section 22–31–129. Regardless, any interpretation of section 22–31–129 made by the Denver District Court in this action is in no way binding in the Broomfield action.

**14.** The Secretary argues that the circumstances in section 1–5–412(3) are not exclusive. He cites to section 1–4–1101(2), C.R.S. (2013), which prohibits counting write-in votes cast for an individual who has failed to timely file the required affidavit of intent to run as a write-in candidate. The Secretary contends that this provision reflects the general principle that votes shall not be counted for an individual who fails to meet the qualifications for office, and that the Rule simply extends this general principle to candidates who "mistakenly" appear on the ballot. However, the affidavit requirement for write-in candidates in section 1–4–1101(2) is more analogous to an election official's initial determination of the candidate's eligibility. As discussed in this opinion, once a candidate has been deemed eligible and certified to the ballot, the candidate can be adju-

dicated ineligible only by a court of competent jurisdiction. And, once ballots are printed, votes cast for a candidate appearing on that ballot are not counted only where the candidate has died or voluntarily withdrawn, *see* § 1–5–412(3), or where the candidate attempted but failed to withdraw in time to be removed from the ballot, *see* § 1–4–1001(1) ("[I]n the event the withdrawal of candidacy is not made in time for the candidate's name to be taken off the ballot, any votes cast for the candidate shall be deemed invalid and shall not be counted."). In an amicus brief, Rico Figueroa likewise argues that the "no-count" circumstances in section 1–5–412(3) are not exclusive. Figueroa cites to section 1–7–309(1), C.R.S. (2013), which prohibits the counting of votes "if an elector marks more names than there are persons to be elected to an office or if for any reason it is impossible to determine the elector's choice of candidate." However, votes cast on these "defective" ballots are not counted only where an election judge is unable to determine the elector's intent. § 1–7–309(4). Such a determination is in no way related to a candidate's eligibility.

Secretary argues that his rulemaking authority permits him to also deem invalid any votes cast for a candidate who is "mistakenly" certified to the ballot, and the error is discovered after ballots have been printed. Even assuming the Secretary's rulemaking authority permits him to expand the limited "no-count" circumstances identified in statute—a proposition we highly doubt—the plain language of Rule 10.7.5 conflicts with section 1–4–1002(2.5); accordingly, the rule is void.

¶ 38 The Secretary argues that it should be "practically tautological" that votes cast for an individual who did not satisfy the qualifications for office at the time he or she became a candidate should not be counted, and that it should be "even more obvious that votes cast for an ineligible candidate—even if tabulated for some reason—should not have any effect on the outcome of the election." Sec'y Appl. for Review Pursuant to § 1–1–113(3), C.R.S., at 15. However, the election code expressly requires votes cast for a disqualified partisan candidate to be counted and recorded under certain circumstances, and such votes can indeed affect the outcome of an election.

¶ 39 Section 1–4–1002(2.5)[15] addresses vacancies in a "party nomination occurring less than eighteen days before the general election," where the vacancy "is caused by the declination, death, *disqualification,* or withdrawal of any person nominated at the primary election." (Emphasis added). In the event of such a vacancy:

> [T]he *votes cast for the candidate whose* declination, death, *disqualification,* or withdrawal *caused the vacancy are to be counted and recorded,* and, if the candidate receives a plurality of the votes cast, such vacancy shall be filled after the general election by the respective party vacancy committee.

§ 1–4–1002(2.5) (emphasis added). Section 1–4–1002(2.5) thus requires that votes cast for a disqualified partisan candidate be

counted in these circumstances, and if the disqualified candidate receives the most votes, the party vacancy committee is permitted to fill the vacancy. As a rule of general applicability, Rule 10.7.5 applies to both nonpartisan and partisan elections. Under Rule 10.7.5, if the designated election official determines, after ballots are printed, that a partisan candidate whose name appears on the ballot is "not qualified for office," the votes cast for that individual are "invalid and must not be counted." The Rule operates in direct conflict with section 1–4–1002(2.5), and is therefore void.

¶ 40 In addition to this conflict, we conclude that the Rule also contravenes provisions of the election code that require courts to determine challenges to a candidate's eligibility. Once an election official has verified a petition or certificate of designation or nomination and determined that it appears to be sufficient, the election code expressly grants courts—not election officials—the authority to determine subsequent questions concerning a candidate's eligibility. Under the statutory framework established by the General Assembly, challenges may be brought to a candidate's eligibility at various junctures in the electoral process. *See* §§ 1–4–909(1), 1–4–501(3), and 1–11–201(1), C.R.S. (2013). These challenges may be brought not merely by an opposing candidate, but by "any eligible elector." Importantly, at each of these junctures, the election code requires a court, not an election official, to determine the issue of eligibility.

¶ 41 First, an eligible elector may challenge the validity of a petition, certificate of designation, or nomination within five days after an election official has issued a statement of sufficiency or the certificate of designation has been filed with the election official. § 1–4–909(1). Such challenges are determined by the district court, not the designated election official. *Id.*

¶ 42 Second, any eligible elector may challenge the qualification of any candidate within five days after the candidate has been

---

15. Section 1–4–1002(2.5) is cross-referenced in section 1–5–412(3) as an exception to the "no-count" mandate for candidates who have died or withdrawn after ballots are printed. *See* § 1–5–412(3) (providing that, if ballots are already printed, the votes cast for the withdrawn or deceased candidate are invalid and shall not be counted "[e]xcept in the case of a vacancy to be filled in accordance with ... section 1–4–1002 ... (2.5)").

certified to the ballot. § 1–4–501(3). Where a question of eligibility arises after the candidate has been certified to the ballot, the plain language of section 1–4–501(3) makes clear that the court—not the election official—must determine whether the candidate is qualified, specifically, "the *court shall* hear the testimony and other evidence, and within forty-eight hours after the close of the hearing, *determine whether the candidate meets the qualifications* for the office for which the candidate has declared." *Id.* (emphasis added).

¶ 43 Finally, any eligible elector may bring an election contest in the district court under section 1–11–201 to challenge the eligibility of a candidate who wins an election. Section 1–11–201(1)(a) expressly provides that an election contest may be brought on grounds that "the candidate elected is not eligible to hold the office for which elected." By providing such grounds for an election contest, the legislature has expressly contemplated the situation in which an ineligible candidate is elected to office, and has addressed this scenario by allowing any eligible elector to bring a contest under section 1–11–201(1)(a). Again, however, the legislature intended to reserve to the courts the authority to *determine the candidate's eligibility*. *See* § 1–11–212, C.R.S. (2013) ("Contested election cases of county and nonpartisan officers ... shall be *tried and decided by the district court* ....") (emphasis added).

¶ 44 In sum, the code expressly provides for challenges to a candidate's eligibility immediately after the election official issues a statement of sufficiency or a certificate of designation is filed with the designated election official; immediately after a candidate has been certified to the ballot; and again post-election. At each juncture, the power to resolve issues regarding candidate eligibility resides with the courts. This statutory framework also reflects the legislature's recognition that once ballots are printed and distributed, and voting is underway, the election process must be allowed to proceed, and any late-arising issues regarding a candi-

date's eligibility are to be resolved through a post-election contest.

¶ 45 The Secretary argues that Rule 10.7.5 is necessary to preserve the integrity of elections by preventing "sham candidates." We disagree. No one has suggested that the school district director election underlying this case involved a "sham" candidacy. Moreover, various checks in the system render it unlikely that ineligible candidates will be "mistakenly" certified to the ballot under ordinary circumstances.[16] And while the Secretary promulgated Rule 10.7.5 based on a presumption that Speers is ineligible, the question of her eligibility has not been determined by any court. In any event, the issue before *this* court is not whether Speers is eligible to hold office or whether Figueroa instead was legally elected. Those issues are properly before the district court in the Broomfield election contest, and we do not opine on the merits of those issues here. Rather, the issue before this court is whether the Secretary may promulgate a rule giving designated election officials the unilateral power to determine—after ballots have been printed—that a candidate on the ballot is "not qualified for office," and to declare that any votes cast for that candidate are "invalid and must not be counted."

¶ 46 Although the Secretary's statement of justification refers to "mistaken" certifications, and we assume that election officials act in good faith, the Rule itself places no parameters on a designated election official's authority to deem an individual on the ballot "not qualified for office," including where the candidate contests such a determination. In this case, the designated election official's conclusion was based on a seemingly straightforward issue of residency—specifically, that the candidate's residence apparently lies outside of the director district boundaries. However, issues regarding a candidate's qualifications for office are not necessarily clear-cut. Even questions of residency might be contested where, for example, a candidate owns more than one home, or where the date residency was established is disputed. *See, e.g., Romero v. Sandoval,*

16. The circumstances of this case are unusual, in that the designated election official neglected to re-confirm Speers' address using the recently redrawn district boundaries.

685 P.2d 772, 775 (Colo.1984) (holding that date on voter registration page provides only prima facie evidence of length of residency, and that a candidate may "establish the length of his residency within the district by evidence other than the voter registration page if necessary"). Under Rule 10.7.5, however, the election official is authorized to unilaterally determine that a candidate is "not qualified for office," regardless of the grounds for ineligibility, and irrespective of whether the candidate contests such grounds.

¶ 47 Indeed, Rule 10.7.5 becomes especially problematic where the candidate contests a designated election official's determination that the candidate is not qualified for office. Under the Rule, votes cast for that candidate are not counted, forcing the candidate to either: (1) bring a last-minute challenge under section 1–1–113; or (2) wait until after the election and bring an election contest pursuant to sections 1–11–201 and –202.

¶ 48 To force a certified candidate to bring a last-minute challenge under section 1–1–113 would inject uncertainty into the process for voters, particularly where ballots have been printed and the voting process may be underway. Importantly, this approach also shifts the burden of proof to the certified candidate. Under the legislature's statutory scheme, a party challenging the eligibility of a certified candidate has the burden to prove that candidate's ineligibility. However, under Rule 10.7.5, the previously certified candidate who is deemed ineligible by an election official after ballots have already been printed is forced to file a last-minute action under section 1–1–113 and prove that she is eligible.

¶ 49 These problems are magnified in a post-election contest. If the candidate deemed ineligible by the designated election official ultimately garners the most votes cast, she is hampered in pursuing a contest because she must not only prove her eligibility, but also prove that she received sufficient votes to justify bringing the election contest. *See* § 1–11–201(1)(b), (c), (e). Under the Rule, however, the votes cast for that candidate are not counted, making it impossible for her to know how many votes she actually received, and therefore, whether she has any basis to bring a contest under section 1–11–201(1).

¶ 50 Finally, we reject the Secretary's argument that Rule 10.7.5 simply restores the status quo when an ineligible candidate is mistakenly certified to the ballot. The Secretary argues that an ineligible candidate should withdraw, and that Rule 10.7.5 simply permits election officials to disregard votes cast for an ineligible candidate who nonetheless refuses to withdraw. This argument presumes, however, that a certified candidate's ineligibility will be always unambiguous and uncontested, even though the Rule applies with equal force where the candidate disputes the designated election official's determination. More fundamentally, the Secretary's argument presumes that a candidate whose eligibility is questioned is required to withdraw. However, section 1–4–1001(1) only contemplates a candidate's voluntary withdrawal. Nothing in the election code requires a certified candidate to withdraw, or suggests that an election official, upon determining that a candidate is "not qualified for office," may force a certified candidate to withdraw. Yet by not counting votes cast for a candidate deemed by the election official to be unqualified, Rule 10.7.5 essentially forces a candidate who has not voluntarily withdrawn into the same position as one who has.

### III. Conclusion

¶ 51 We hold that the Secretary acted in excess of his rulemaking authority in promulgating Rule 10.7.5. The Rule contravenes section 1–4–1002(2.5), as well as election code provisions that require issues regarding a certified candidate's eligibility to be resolved by the courts. The Rule is therefore void. Accordingly, we affirm the district court's order, albeit on different grounds.

JUSTICE EID dissents, and JUSTICE COATS joins in the dissent.

Justice Eid, dissenting.

¶ 52 The majority concludes that Rule 10.7.5 is void for two reasons. First, it states that the Rule conflicts with the partisan exception to section 1–5–412(3), C.R.S. (2013), which requires that votes be counted in virtu-

ally all circumstances so that the disqualified candidate's party may fill the vacancy. But this is undisputedly not a partisan election, and there is no argument that the partisan exception should be or has been applied here. The majority's use of a possible misapplication of the Rule to void the Rule in its entirety turns on its head our obligation to read statutes and regulations as a harmonious whole where possible.

¶ 53 More important, however, is the majority's second rationale, which posits that a court, not the designated election official, should be the ultimate arbiter of candidate qualifications. With this proposition I wholeheartedly agree. But I would conclude that this is precisely what happened here under the Rule. When the designated election official declined to count the votes of the candidate he had determined to be ineligible due to improper residency, that act was challenged in a court proceeding under section 1–1–113(1), C.R.S. (2013), which in turn has led us to our current review. Ironically, then, by voiding the Rule for lack of judicial review, the majority short-circuits the very judicial review it seeks to protect.

¶ 54 Finally, the majority discounts the Secretary's rationale for promulgating the Rule—namely, to avoid the possibility that a candidate, whose ineligibility is discovered before the election, will refuse to withdraw and is subsequently deemed to be "duly elected" under section 22–31–129, C.R.S. (2013), which in turn shifts the power to choose a candidate from the voters to the school board. That this is a serious concern is again demonstrated by the proceedings in this case, where the district court came to the precise conclusion that the candidate was "duly elected" and the vacancy should be filled by the board appointment process. For all of these reasons, I respectfully dissent from the majority's opinion.

¶ 55 The majority's first ground for voiding Rule 10.7.5 is that it is a rule of "general applicability" that would apply to the partisan exception under section 1–5–412(3), which provides that in virtually all circumstances the votes should be counted in order to trigger the party vacancy process.[1] I agree with the majority that application of the Rule in the partisan context would conflict with the partisan exception, and, in fact, the Secretary is considering the issue in ongoing proceedings regarding the promulgation of a permanent rule that would take the place of the temporary rule at issue here. Where I disagree with the majority is that the possible application of the Rule in the partisan context voids the Rule as applied here. Plainly, the partisan exception reflects the legislature's policy choice that where a candidate in a partisan election is disqualified, the party itself should control the process of filling the vacancy. But the statute is set up as a general rule—under which the election official is not to count the votes in cases of death or withdrawal—with a partisan exception. This case involves the application of the Rule in the general, non-partisan context. It is not a facial challenge that attacks the Rule in all its applications, and even if it were, demonstrating the invalidity in one application (i.e., the partisan context) would not be enough to invalidate the entire Rule. Stated differently, the fact that the Rule is one of general applicability does not mean that it applies in all circumstances.

¶ 56 Of course, it is appropriate to consider the partisan exception as a matter of statuto-

1. The general non-partisan vacancy provision of section 1–5–412(3), with the partisan exception emphasized, states: "If, before the date set for election, a duly nominated candidate withdraws by filing an affidavit of withdrawal with the designated election official or dies and the fact of the death becomes known to the designated election official before the ballots are printed, the name of the candidate shall not be printed on the ballots. *Except in the case of a vacancy to be filled in accordance with the provisions of section 1–4–1002(2.3) or (2.5) [the partisan vacancy provisions]*, if the ballots are already printed, the votes cast for the withdrawn or deceased candidate are invalid and shall not be counted." Section 1–4–1002(2.5) provides that if a vacancy is created within 18 days of an election due to the "declination, death, disqualification, or withdrawal" of a party's candidate, the votes for that candidate shall be counted and, if the candidate prevails, the party vacancy committee shall fill the vacancy. Section 1–4–1002(2.3), meanwhile, provides that if the vacancy occurs more than 18 days from the election, the party vacancy committee shall select a replacement candidate and notice of the substitution shall be provided according to the statute's notice provisions.

ry interpretation. But we are obligated to interpret regulations and statutory provisions as a consistent, harmonious whole where possible, not to maximize discord, as the majority does. *See Bd. of Cnty. Comm'rs. v. Vail Assocs.*, 19 P.3d 1263, 1273 (Colo.2001); *Regular Route Common Carrier Conference v. Pub. Utils. Comm'n.*, 761 P.2d 737, 745 (Colo.1988). In my view, as a matter of statutory interpretation, the partisan exception simply demonstrates a specific legislative choice in the area of partisan elections, which area is not implicated here.

¶ 57 With regard to the majority's second rationale, I agree that the election code requires courts, rather than election officials, to be the ultimate arbiter of candidate eligibility. But I disagree with the majority's suggestion that Rule 10.7.5 runs afoul of this principle. In fact, the litigation before us shows that a designated election official's determination under Rule 10.7.5 not to count the votes cast for a given candidate is subject to review by a court (or, in this case, courts). When the official determines under the Rule that votes which were cast for a candidate who was mistakenly certified should not be counted, the candidate (or others, as was the case here) may bring suit against the official for failing to perform a duty under section 1–1–113(1), C.R.S. (2013). At that point, the court must decide whether the official, pursuant to the Rule, properly determined that the candidate was "not qualified for office," such that the votes she received were "invalid" and "not [to] be counted." If the designated election official was wrong in his assessment of the candidate's qualifications, the votes for that candidate are counted, and if she receives the highest number of votes, she is certified as the winner. The only reason the district court in this case did not perform the analysis required under the Rule was that it voided the Rule. In other words, an election official's assessment of a candidate's qualification is not "unilateral," as the majority perceives. Maj. op. ¶ 45. Rather, it subject

to judicial review under the procedures set forth in section 1–1–113(1), which we continue to perform today.

¶ 58 The question, then, becomes whether there is a gap in the statutes which Rule 10.7.5 properly filled. As this case aptly demonstrates, there is. Here, the designated election official certified the candidate as meeting the qualifications of office, including the residency requirement. But a week before the election, the official discovered that the candidate was not a resident of the district from which she was running and therefore was not eligible to run for the office. Maj. op. ¶ 11. The official informed the candidate of her ineligibility and asked her to withdraw. *Id.* Although she did not dispute the official's statement regarding her ineligibility, she refused to withdraw. *Id.* Rule 10.7.5 allowed the election official to treat the candidate as the functional equivalent of a withdrawn candidate under section 1–5–412(3), which instructs that the election officials shall not count the ballots for withdrawn candidates, thus setting the stage for a challenge under section 1–1–113.

¶ 59 Without Rule 10.7.5—that is, under the majority's "no gap" rationale–the election official would be left with few options. The majority points to sections 1–4–501(3) and 1–4–909(1), C.R.S. (2013) as providing an opportunity to challenge a candidate's qualifications. Maj. op. ¶ 40. But these provisions create an extremely narrow five-day period in which to challenge the designated election official's initial certification of the candidate's eligibility. The short five-day timeframe is intended to give deference to the official's initial determination of eligibility,[2] not to deprive him of the ability to fix his own mistakes. In any event, the mistake here was not discovered until after the five-day window had passed, so sections 1–4–501(3) and 1–4–909(1) never came into play.

¶ 60 The majority also points to the post-election contest provisions, section 1–11–201, C.R.S. (2013), as creating an opportunity for

2. "A petition or certificate of designation or nomination that has been verified and appears to be sufficient under this code *shall be deemed valid* unless a petition for a review of the validity of the petition pursuant to section 1–1–113 is filed with the district court within five days after

the election official's statement of sufficiency is issued or, in the case of a certificate of designation, within five days after the certificate of designation is filed with the designated election official." § 1–4–909(1) (emphasis added).

review. But under this scenario, the election official would be required to count the votes for the ineligible candidate, certify the ineligible candidate as the winner (if she received the highest number of votes, as was the case here), and then turn around and file a post-election contest suit against himself to undo the certified results, since he had known all along that the candidate was ineligible. Rule 10.7.5 avoids this awkward situation. By permitting the election official to treat the ineligible candidate as the functional equivalent of a withdrawn candidate, the Rule fills the gap in judicial review that exists between the initial five-day period and the post-election contest provisions.

¶ 61 But an even greater problem with the majority's "no gap" rationale is the one identified by the Secretary as the basis for the Rule—namely, that a candidate whose ineligibility is discovered prior to the election but who refuses to withdraw will be deemed "duly elected" under section 22–31–129, thus shifting the power of selecting a candidate from the electorate to the school board. § 22–31–129(1)(d) & (2) (instructing that the Board shall fill by appointment a vacancy created "[i]f the person who was duly elected … is or becomes … a nonresident of the school district"). The majority discounts the Secretary's concern, maj. op. ¶ 45, but that is precisely what the district court's "duly elected" rationale permitted in this case. Such an improper shift in selection authority should not be permitted. *Cf. Smith v. Cherry,* 489 F.2d 1098 (7th Cir.1973) (holding that allegations that a primary winner withdrew after his victory in order to allow the party committee, rather than voters, to select the party's candidate were sufficient to state a cause of action under the Civil Rights Act).

¶ 62 The majority asserts that the question here is not whether the candidate was eligible or whether the school board itself should fill any vacancy under section 22–31–129, but rather, whether the Rule is valid. Maj. op. ¶ 45. But the two questions are inextricably intertwined. As noted above, the candidate's eligibility and the applicability of section 22–31–129 would be at issue if Rule 10.7.5 were upheld and allowed to play out. The majority seems to believe that it has left those

questions open, but by discounting the Secretary's rationale for the Rule and by leaving the district court's rationale in place, its opinion leads inexorably to the conclusion that the candidate was "duly elected" and that the vacancy should be filled by the board by operation of section 22–31–129. For these reasons, I respectfully dissent from its opinion.

¶ 63 I am authorized to state that Justice COATS joins in this dissent.