No. 15,427.

PEOPLE EX REL. ROSENBERG *v.* KEATING.
(144 P. [2d] 992)

Decided January 10, 1944.

Mr. OMAR E. GARWOOD, for plaintiff in error.

Mr. GEORGE A. CROWDER, Mr. C. F. CROWLEY, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A PROCEEDING in the nature of quo warranto, by the people on relation of a qualified private citizen (the district attorney having declined so to proceed), challenging the right of defendant in error functioning therein, to hold the office of election commissioner of the City and County of Denver. The district court held adversely to the challenge and gave judgment of dismissal.

It appears that by its charter the City and County of Denver created an administrative activity called Election Commission, composed of three commissioners, to perform the duties in relation to elections customarily discharged by county clerks in other counties pursuant to general statutory provisions; that at the city election of May, 1939, defendant was elected as one of the elec-

tion commissioners for a term of four years and until his successor should be duly elected and qualified; that March 27, 1943, he filed his resignation of the office with the Mayor, to be effective April 1, 1943, which was accepted by that official, but who did not fill the vacancy thus seemingly resulting; that at the ensuing election in May, defendant in error was a successful candidate for the same office, received a certificate of election thereto, qualified therein, and entered upon the duties in due course. It further appears that during the time elapsing between April 1, 1943, the date when defendant in error's resignation as a commissioner allegedly became effective, and June 1, 1943, when he qualified pursuant to the city election of that year, he "participated in no way in the office of the election commission," nor was his candidacy initiated prior to April 1, 1943. However, during the period following the resignation of defendant in error the other two election commissioners functioned as the commission and carried on in full form.

The basis of the proceeding is that defendant in error, although concededly qualified to occupy and discharge the duties of the office involved, still, due to a provision of the city charter, as said, was not eligible to become a candidate therefor at the 1943 city election. The charter provision reads: "No election commissioner shall become a candidate for any elective office during his incumbency as election commissioner." The controlling question is, Was defendant in error an incumbent election commissioner at the time of the election in 1943? If so, as seems clear, the charter concluded his candidacy. It is quite as clear, as we think, that unless the resignation of defendant in error, tendered and accepted in manner already stated, was effective to the end contemplated therein and thereby, his incumbency persisted. We are disposed to the view, however, that the resignation was effective, and that the candidacy of defendant in error was not "during his incumbency as election commissioner."

It appears from the city charter that vacancies in city offices may result from resignation. Municipal Code 1927, article XX, section 321, reads: "Any and all vacancies in any elective or appointive offices, occasioned by death, resignation or otherwise, and not otherwise provided for, shall be filled by the mayor." Such likewise appears in relation to municipal offices chosen under general law. '35 C.S.A., c. 163, §12, par. Fourth. That county officers may resign, appears from sections 182 and 183, chapter 45, '35 C.S.A. State officers are in like category. Art. IV, §§6, 15, Colo. Const. In short, considering the question generally, relinquishment of public office may be exercised at the pleasure of the holder thereof. *Trimble v. People,* 19 Colo. 187, 196, 34 Pac. 981; *Locke v. City of Central,* 4 Colo. 65. Here, however, plaintiff in error contends that an unusual situation exists—sufficiently so to work futility of the steps taken by defendant in error to that end. In support of that view many cases are cited, but we regard them as involving principles not present in this inquiry. *Badger v. United States, ex rel.,* 93 U.S. 599, 23 L. Ed. 991, emphasized by plaintiff in error, involved the effectiveness of resignations by township officers, obviously undertaken that they might "hinder and delay the collection of judgments" against the public entity of their official service. In holding that thus such officials could not circumvent the law and thwart judgment creditors, the Supreme Court of the United States said: "So, we think, where a person * * * in an office seeks to prevent the performance of its duties to a creditor of the town, by a hasty resignation, he must see that he resigns not only *de facto,* but *de jure;* that he resigns his office not only, but that a successor is appointed. An attempt to create a vacancy at a time when such action is fatal to the creditor will not be helped out by the aid of the courts." *People ex rel. v. Supervisor,* 100 Ill. 332, is of kind with the Badger case, which is cited by the Illinois court. The sum of the holding was that the township super-

visor's resignation from the office was not effective in relation to his duty to execute and deliver certain township bonds, "which had been voted as a subscription to the capital stock of a railway company." An extended discussion of the facts involved in the case will be found in the opinion in *People ex rel. v. Supervisor,* 91 Ill. 422. In *State ex rel. v. Nobles,* 109 Wis. 202, 85 N.W. 367, although the court there discoursed learnedly on the duty of the official in that case (school district treasurer) to continue in his office, the decision rested upon the fact that the resignation upon which reliance was had, was made to the "electors of the district at the annual meeting," and not to the "district board," as required by the statute. Further, the controversy there had to do with the claim of the district treasurer to another office, not the same one, and incompatible therewith, and since a successor to the office which he was attempting to renounce had not qualified, he was not competent to take over the second office.

In *United States v. Green,* 53 Fed. 769, the mayor and board of aldermen of a city in Missouri, resigned in an attempt to avoid making a levy to pay a judgment against the city. For the reasons generally ascribed in such situations, their resignations were held to be ineffectual, the court saying: "Their attempt to thus escape the judgment of this court was as abortive as it was ill advised."

The foregoing cases are typical of many additional ones urged upon our attention by able and industrious counsel, and all of them rest upon sound legal principles, developed out of the necessities of situations. The right of any public official to resign cannot be doubted; but when the resignation is predicated upon the premise, stated, or which his conduct may imply, that it is to avoid performing a specific duty in the interest of a party in whose behalf such official is legally bound to act, his resignation, however formally tendered and accepted, will be regarded as without effect. Other-

wise, public officials, persistently and successively resigning their offices, could work the undoing of parties whose rights are dependent upon action by those officials. The law may not thus be mocked, nor will ministers of justice, to whom appeal is made for relief in such situations, fail to grant relief; hence, the pronouncements recorded in the books, some of which we have reviewed.

Obviously, as we think, the case here is distinguishable. The resignation of defendant in error was not purposed to, nor did it, prevent the election commission from functioning in general or in any given instance. No person in particular, nor the public as a whole, suffered the loss of any right by reason thereof, nor has there been complaint to that effect by plaintiff in error, or from any other source, or at all, so far as appears. Under the provision of the charter, against which defendant in error is said to have given offense, an election commissioner's office is so intimately connected with elections that it were wise to disqualify him from being a candidate for an elective office during his incumbency thereof, and thus assure his disinterested service therein. No such disqualification attends a county clerk, who has much more individual control of election procedure than has one election commissioner under the Denver charter, a thought only important in demonstrating that the prohibited candidacy is not inherently evil or generally proscribed. The foregoing is not advanced on the theory that the charter provision is wrong or noneffective, for we think otherwise, but, rather, that we may approach the problem here in relation to the facts as they are. Defendant in error frankly admits that he wished to be a candidate for election commissioner at the 1943 city election, and he was not unmindful of the charter provision which precluded an election commissioner from being a candidate for "any elective office." He resorted to his general right to resign from his then office of election commissioner, and by that means, as he contends,

he ceased to be an "incumbent" of an office, which, had he continued to occupy it, would have brought his candidacy within the disqualifying provisions of the charter. The sum of the rule, as we perceive, is that public officials, although ordinarily privileged to resign, may not do so where the effect thereof is to still the public entity which they have chosen to serve, and emphasis attends where the effect of such resignation is to work failure of official action in behalf of those entitled to definite and active relief as against such entity. Here, as already appears, the public entity, from the officiary of which defendant in error resigned, consisted of a board of three members, two of whom carried on in ample authority and full effectiveness, and, as already stated, without complaint or criticism from any source. Indeed, the relator, although in instituting this proceeding acted within his rights as a citizen, did not think to act before the election was held, the result declared and those chosen thereat, including defendant in error, had qualified and entered upon their duties.

It is urged that the charter provisions to the effect that city officials, including election commissioners, "shall hold their respective offices for a term of four years and until their successors are duly elected and qualified," operates to make the resignation involved noneffective pending the qualification of a successor in the resigned office. In *Cragin v. Frohmiller*, 43 Ariz. 251, 30 P. (2d) 247, that point was considered, the authorities reviewed, and the conclusion reached that the contention was untenable. Employing, and quoting somewhat from, the exposition by the Supreme Court of Arizona, our observation is that the charter provision "deals with vacancies occurring by reason of the expiration of a term of office which is a certain event," and not a "vacancy occurring before the expiration of the term of office, which is an uncertain event." Applied here as of June 1, 1943, when, had defendant in error not resigned, his former term would have expired, and,

absent the qualification of a successor, he would be holding over, but applied as of April 1, 1943, when his resignation was accepted, he is not holding over, but, rather, our conclusions already stated in mind, is serving a term which began June 1, 1943.

■ If we were to accept the contentions of plaintiff in error in their entirety, still, as seems evident, the proceeding here would be void of effect. On the assumption of such holding, defendant in error did not effectively resign, hence he was not eligible to become a candidate; but in fact he was a candidate, and, although there were other candidates, he received the highest number of votes cast therefor. In such situation, as said in Paine on Elections, page 474, section 559, "the election is a nullity, although votes may have been cast for eligible candidates. The person receiving the highest number of votes, * * * fails of an election because of his ineligibility. The others fail because the majority of the electors express their opinion against their election." See, *People ex rel. v. Lynch,* 219 N.Y.S. 52, and memorandum opinion in same case by the New York Court of Appeals, 245 N.Y. 534, 157 N.E. 847; McCrary on Elections (4th ed.) p. 248, §§328, 329. It follows that defendant in error, qualified except as to his eligibility to become a candidate at the 1943 election, holds over until his successor shall be elected and qualified pursuant to the charter and ordinances of Denver, but which, plaintiff in error's theory recognized, has yet to be done.

■ We are mindful of, and not a little moved by, the assertion in argument to the effect that by his resignation made at the time appearing, defendant in error neglected the duties of his office at the height of the election commission's functioning — the period shortly preceding the election, during the day thereof, and immediately following the closing of the poll, including the official canvass. We think a sufficient answer is that the question was not presented to the court at a time when its solution would have been pertinently impor-

tant, and a conclusive answer is that in the absence of venal acts, not hinted here, an elected public official's conduct in office only is referable to the electorate. There was such reference in this instance, and the resolution was favorable to defendant in error. Besides, assuming otherwise as to all that is said in this paragraph, a quickening thought is that the complaint of neglect is of a term fully expired — not of the current tenure.

The learned trial judge proceeded in comprehension, and resolved with understanding. Let an order of affirmance be entered.