2015 CO 12

Enrico FIGUEROA, Brian Vande Krol, Joseph Holt, Mark Rule, and Melissa Wills, Plaintiffs–Appellants

and

Wayne W. Williams, in his official capacity as Colorado Secretary of State, Plaintiff–Intervenor

v.

Amy SPEERS, Defendant–Appellee

and

Karen Marquez, Nicole S. Hanlen, James H. Joy, and David J. Rodenbaugh, Intervenors–Appellees.

Supreme Court Case No. 14SA235

Supreme Court of Colorado.

March 2, 2015

Attorneys for Plaintiffs–Appellants: Hackstaff & Snow, LLC, Mario D. Nicolais, Megan Murphy, Denver, Colorado.

Attorneys for Intervenors–Appellees: Heizer Paul LLP, Edward T. Ramey, Martha M. Tierney, Denver, Colorado.

No appearance on behalf of Wayne W. Williams or Amy Speers.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 Plaintiffs–Appellants appeal the Broomfield district court's judgment in their election contest directly to us under section 1–11–214(2), C.R.S. (2014). The district court declared a vacancy in the Adams County School District 12 Director District 4 school board director position because Defendant–Appellee Amy Speers was elected but unqualified to serve. Plaintiffs–Appellants assert that, contrary to the district court's holding, Plaintiff–Appellant Enrico Figueroa should have been declared "legally elected" because he received the highest number of votes of any qualified candidate. We hold that, although Speers was unqualified to serve, no court declared her to be unqualified until after voting had been completed. In this situation, the legally elected party is the party who receives the most legal votes. Thus, Speers was legally elected because she received the most legal votes, meaning Figueroa was not legally elected. The district court therefore correctly voided her election and declared a vacancy under the provisions of Colorado's election code, and its judgment is affirmed.

## I. Facts and Procedural History

¶2 This case arises from a contested two-candidate nonpartisan election for a school board director position in Adams County School District 12 ("the School District"). The School District is split into various director districts, and while eligible electors may vote for board members in all districts, only a resident of a particular district may run for that district's school board position. In 2011, both Figueroa and Speers applied to fill the then-vacant Director District 4 position on the Adams County Board of Education. At that time, both Figueroa and Speers resided within the boundaries of Director District 4 and were qualified to hold the position. The board of education appointed Figueroa to fill the vacant position until the next election in November 2013.

¶3 As the November 2013 election approached, Figueroa and Speers each submitted timely petitions to be candidates for the soon-to-open Director District 4 position.

Although both potential candidates signed affidavits affirming that they met all the requisite qualifications to hold the office, unbeknownst to Speers, the School District had redrawn the director districts in 2012 and had placed Speers's home outside of Director District 4. The School District's designated election officer, Frances E. Mullins, was also unaware that Speers no longer met the residency requirement, and so she deemed both petitions sufficient. Neither the sufficiency of Speers's petition nor her certification to the ballot was challenged within the respective five-day windows under section 1-4-909(1), C.R.S. (2014) (allowing five days to challenge the sufficiency of a petition before certification), or section 1-4-501(3), C.R.S. (2014) (allowing five additional days to challenge the certification of a candidate to the ballot), and thus Mullins's certification of both Speers and Figueroa to the ballot was valid despite Speers's unwitting failure to meet the residency requirement.

¶ 4 Ballots listing both candidates for the Director District 4 position were printed and mailed between October 15, 2013, and October 18, 2013. Then, about a week before the election, Mullins became aware that Speers was no longer a resident of Director District 4. Mullins promptly requested that Speers withdraw from the race, which Speers refused to do. Mullins then notified the relevant county clerks to withdraw Speers's name, but the clerks similarly refused to do so. Nobody involved requested judicial intervention of any kind prior to the election, and voting proceeded with both candidates remaining on the ballot.

¶ 5 In a final attempt to effectively withdraw Speers from the election, the Secretary of State issued an emergency rule at the end of the final day of the election that instructed the clerks not to count the ballots cast for Speers. A district court invalidated this rule as incompatible with Colorado's election code, and we upheld that court's decision in *Hanlen v. Gessler*, 2014 CO 24, ¶ 36, 333 P.3d 41, 49, because "questions regarding a certified candidate's eligibility [must] be deter-

mined by a court, not an election official." We did not opine, however, as to whether Speers was eligible to hold office, whether she was legally elected, or whether Figueroa instead was legally elected. These issues—now squarely before us—were not relevant to the issue in *Hanlen* and were stayed before the Broomfield district court at that time. *Hanlen*, 333 P.3d at 46–47.[1] After the district court invalidated the emergency rule, the clerks counted the votes for Speers and determined that she won the election by roughly a two-to-one ratio.

¶ 6 The Broomfield district court resumed proceedings subsequent to our decision in *Hanlen*. It considered Figueroa's claims that Speers was not eligible to hold office under section 1-11-201(1)(a), C.R.S. (2014), that the votes cast for her were therefore invalid, and thus that Figueroa was legally elected to the Director District 4 position under section 1-11-201(1)(e) because he "received the most votes of any qualified candidate." The court initially asserted that although no challenge was made to Speers's qualifications within the five-day windows prescribed by sections 1-4-909(1) and 1-4-501(3), "Mullins['s] failure to confirm residency prior to determining the sufficiency of the petition was a failure to discharge her statutory duty due to neglect of that duty as contemplated by § 1-1-113(1)," and so Speers's certification to the ballot could have been challenged in the court up to the end of election day under that section. *See* § 1-1-113(1), C.R.S. (2014). But because neither Figueroa nor any other party sought any judicial intervention whatsoever prior to the election, the court found that Figueroa had "slept on his rights" and thus that Speers had won the election. Regarding Speers, the court noted that there is no dispute that she "is ineligible to hold the office for which she was elected as contemplated by § 1-11-201(1)(a)," and because Speers had not sought to take the oath of office and had stated that she did not intend to cure her residency defect, it voided her election. The

---

1. The Broomfield district court stayed the case until we issued our opinion in *Hanlen* because the legitimacy of the Secretary of State's emergency rule was relevant to its determination of these issues—specifically, the votes needed to be counted (or not) to determine whether either candidate was legally elected.

court then declared a vacancy in the Director District 4 position pursuant to section 22–31–129(1), C.R.S. (2014), due to Speers's "ineligibility, failure to comply with the requirements to serve, and the [c]ourt's decree voiding her election."[2]

¶ 7 Figueroa appealed the district court's decision directly to us pursuant to section 1–11–214(2). His central contention is that Speers could not have been legally elected because she was ineligible to serve, and thus that Figueroa should be deemed to have been legally elected because he received the "highest number of votes among qualified candidates." It is undisputed that Speers is not eligible to hold the Director District 4 office. Thus, the central questions on appeal are whether Speers was nonetheless legally elected and, if not, whether Figueroa was legally elected.

## II. Standard of Review

¶ 8 Whether either Speers or Figueroa was "legally elected" is a question of law, and so we review the district court's decision de novo. *Hanlen*, 333 P.3d at 48.

## III. Analysis

¶ 9 Because Figueroa contests a nonpartisan election after voting had been completed, our analytical task is guided by section 1–11–216, C.R.S. (2014). That statute requires a court considering a nonpartisan election contest to "pronounce judgment on whether· the contestee or any other person was legally elected to the contested office." *Id.* If the court declares a person elected, "that person [is entitled] to take office when the term of office begins, *upon proper qualification.*" *Id.* (emphasis added). If the court finds that no person was legally elect-

ed, we must "set aside the election and declare a vacancy in the office contested." *Id.* Under this rubric, we must first determine whether Speers (the contestee) was legally elected. While it is undisputed that she was not properly qualified to take office, this alone does not end our analysis. Rather, the key question is whether the district court's unchallenged judgment that Speers was not eligible to take office precludes her from having been "legally elected."

¶ 10 Figueroa brings his election contest under two subsections of section 1–11–201. He first alleges that "the candidate elected [meaning Speers] is not eligible to hold the office for which elected" under subsection (1)(a). *See* § 1–11–201(1)(a). It has never been disputed that Speers is unqualified to take office, and thus the district court appropriately voided her election under this subsection.

¶ 11 Meanwhile, Figueroa's contention "[t]hat, for any reason,· another candidate [meaning Figueroa] was legally elected to the office" under subsection (1)(e) turns on his argument that Speers was never legally elected because she was unqualified to hold the Director District 4 position. *See* § 1–11–201(1)(e). In making this argument, Figueroa creates his own definition of "legally elected," asserting that the person "legally elected" is the "qualified candidate who receives the highest number of votes." This view has no support in the election code or in case law, and it does not comport with section 1–11–201(1)(a).[3] As we observed in *Hanlen*, section 1–11–201(1)(a) "expressly provides that an election contest may be brought on grounds that 'the candidate elected is not eligible to hold the office for which elected.' By providing such grounds for an election

---

2. These three grounds for declaring a vacancy are reflected respectively in subsections (a), (b), and (f) of section 22–31–129(1).

3. Figueroa's only textual support for inserting "qualified" into the definition of "legally elected" is a general provision from the Colorado Constitution: "No person except a qualified elector shall be elected or appointed to any civil or military office in the state." Colo. Const. art. VII, § 6. We are unpersuaded. First, Figueroa does not challenge the constitutionality of section 1–11–201(1)(a), and so that issue is not before us.

Second, we presume the constitutionality of statutes, *Justus v. State*, 2014 CO 75, ¶ 17, 336 P.3d 202, 208, and the election code reasonably comports with this constitutional provision. Essentially, this provision simply says that someone who cannot vote in Colorado cannot hold a civil or military position in the state, whether it be elected or appointed. It does not mandate Figueroa's interpretation of "legally elected," and the legislature did not violate this provision in enacting the vacancy solution to this situation through section 1–11–201(1)(a).

contest, the legislature has expressly contemplated the situation in which an ineligible candidate is elected to office...." *Hanlen*, 333 P.3d at 51 (quoting § 1–11–201(1)(a)). Were we to accept Figueroa's assertion that an ineligible candidate cannot be elected to office, we would not only contravene our recent analysis in *Hanlen*, but also render section 1–11–201(1)(a) meaningless.

■ ¶ 12 In fact, this case presents the exact situation contemplated by section 1–11–201(1)(a). While Speers was admittedly unqualified to hold the office for which she ran, neither Figueroa nor any other qualified elector mounted a legal challenge to her qualifications prior to the election despite several provisions authorizing such a suit. *See, e.g.*, § 1–4–909(1) (permitting court challenges to the sufficiency of a petition within five days of the election official issuing a statement of sufficiency); § 1–4–501(3) (permitting an eligible elector to challenge a candidate's certification within five days of the designated election official's certification of that candidate to the ballot); § 1–1–113 (authorizing any eligible elector to file a verified petition in district court alleging that the designated election official has committed a neglect of duty that would result in an order requiring substantial compliance with the election code).[4] The fact that Mullins eventually requested that Speers voluntarily withdraw and then attempted to order clerks not to count votes for Speers is of no moment; "the election code requires issues regarding a certified candidate's eligibility to be determined by the courts," and "a designated election official may [not] unilaterally determine, after ballots have been printed, that a previously certified candidate is 'not qualified for office.'" *Hanlen*, 333 P.3d at 43 (emphasis removed). No court declared Speers legally ineligible prior to the election, and she re-

ceived the highest number of votes in the election, so she was legally elected—an entirely different question in the context of a post-election challenge than whether she was qualified to serve. *See Andersen v. Smyth*, 146 Colo. 165, 360 P.2d 970, 971 (1961) ("Eligibility to hold office has frequently been distinguished from eligibility to be elected."); *People ex rel. Rosenberg v. Keating*, 112 Colo. 26, 144 P.2d 992, 995 (1944) ("[If the candidate] did not effectively resign ... he was not eligible to become a candidate; but in fact he was a candidate, and, although there were other candidates, he received the highest number of votes cast therefor. In such situation ... the election is a nullity, although votes may have been cast for eligible candidates." (internal quotation marks omitted)); *Lewis v. Boynton*, 25 Colo. 486, 55 P. 732, 734 (1898) (defining the person "legally elected" as the person who "had received the highest number of legal votes cast for any person for [the] office").

■ ¶ 13 Returning to section 1–11–216, our determination that Speers was "legally elected" because she received the most legally cast votes precludes Figueroa from having been legally elected to the same position. *Boynton*, 55 P. at 734 ("[I]f a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted, and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible.").[5] Therefore, Speers would be

---

4. We make no judgment as to whether section 1–1–113 could provide a definitive avenue to remove an unqualified candidate from the ballot after the five-day windows to challenge certification have passed.

5. The court in *Boynton* evaluated a similar claim to that asserted by Figueroa. *See generally* 55 P. 732. At the time *Boynton* was decided, courts evaluated election contests under an earlier but nearly identical version of section 1–11–216. *See*

§ 1680, Mills' Ann. St. (1891) ("The court shall pronounce judgment whether the contestee or any other person was duly elected, and the person so declared elected will be entitled to the office, upon qualification.... If the court finds that no person was duly elected, the judgment shall be that the election was set aside."). We see no substantive difference between that statute's "duly elected" and the current statute's "legally elected." *See* § 1–11–216.

entitled to take office were she properly qualified to do so. *See* § 1–11–216. Since it is undisputed that she is not qualified to do so, she cannot take office. *Id.* Since the district court properly voided Speers's election because she cannot take office, and since no other person was legally elected, we must set aside the election and declare a vacancy in the Director District 4 office. *See* § 22–31–129(1)(f) ("A school director office shall be deemed to be vacant ... [i]f a court of competent jurisdiction voids the officer's election or appointment...."); *cf.* § 1–11–216 (recognizing that a legally elected person is entitled to take office only "upon proper qualification" and instructing the court to set aside an election and declare a vacancy in the contested office if no person was legally elected).

### IV.  Conclusion

¶ 14 In sum, although she is not qualified to take office, Speers was legally elected because she received the most legal votes and was not deemed unqualified by a court prior to the election, and Figueroa was not legally elected because he did not receive the most legal votes. Therefore, under the plain language of the statutes at issue, a vacancy in the Director District 4 office must be declared. Accordingly, we affirm the judgment of the district court.